Defendant failed to file a Form 44 Application for Review and Brief to the Full Commission, and failed to appear before the Full Commission. Defendant has shown no good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. In its discretion, the Full Commission affirms the Opinion and Award of the deputy commissioner, with a modification to the credit allowed to defendant.
Based upon the greater weight of the competent and credible evidence of record in this matter, the Full Commission makes the following
 FINDINGS OF FACT
1. On the date of the deputy commissioner's hearing in the matter, plaintiff was thirty-three years old and was residing in St. Pauls, North Carolina. Plaintiff has a high school diploma. Plaintiff's prior work history consists primarily of driving trucks.
2. Robert's Concrete Services was or is owned by Robert Mace. Robert's Concrete Services was sent by certified mail the setting notice for the deputy commissioner's hearing calendar. The certified mail was not claimed by defendant. Defendant's lack of notice of the hearing was occasioned through its own fault, and it was proper, therefore, for the deputy commissioner to hold a hearing despite defendant's absence.
3. Plaintiff had sporadically worked for defendant for about a year and a half as a truck driver/mechanic. Before the date of his injury, plaintiff had been working for defendant for the two previous months.
4. Plaintiff's job for defendant required that he drive cement trucks to deliver cement, and that he perform maintenance as necessary on mixers and dump trucks. On the date of the injury giving rise to this claim, defendant had two crews of four people on each truck.
5. Plaintiff usually worked for defendant five days a week, sometimes more, about 45 hours per week. Plaintiff earned an hourly wage of $10.00, and was paid every week, usually in cash.
5. On 28 May 1999 plaintiff noticed that the truck he was driving had a bad tire; the lock ring that holds the tire onto the rim apparently was not attached properly. Plaintiff informed Robert Mace that the tire was bad, and Mr. Mace told him to take the truck to a tire company to get the tire fixed. Plaintiff was concerned that the truck would not make it that far on public streets with the bad tire, so he stopped his truck and pulled it in front of the building. He then obtained a jack and some other equipment so that he could attempt to remove the wheel.
6. As plaintiff began working on the wheel, the tire exploded. Plaintiff was thrown into the air and landed on the street on his right arm and back. Mr. Mace and other employees heard the explosion and ran out to check on plaintiff. Defendant had actual notice of plaintiff's injury by accident.
7. Emergency management personnel were summoned to the scene and plaintiff was taken by ambulance to the hospital. Plaintiff sustained multiple injuries, including lacerations of the elbow and thumb; a dislocated knee; a left tibial fracture; and torn, sprained, and deranged ligaments in his right knee. Pins were placed in his left tibia and arthroscopic surgery was recommended to evaluate the ligaments in plaintiff's right knee.
8. Plaintiff was treated for his injuries by Dr. Robert E. Carlson at Cape Fear Orthopaedic Clinic. Dr. Carlson performed the arthroscopic procedure on 15 June 1999 to repair two torn ligaments and damaged cartilage in plaintiff's right knee.
9. Because plaintiff sustained significant injuries to both legs in the injury by accident on 28 May 1999, he was unable to tolerate significant weight-bearing for a few weeks. On 19 July 1999 Dr. Carlson ordered crutches for plaintiff and indicated that plaintiff could bear weight as tolerated.
10. On 9 August 1999 Dr. Carlson removed the external fixator from plaintiff's left leg, and ordered physical therapy for two times per week. Plaintiff underwent a course of physical therapy, and on 4 October 1999 Dr. Carlson determined that despite the therapy, plaintiff was in need of further surgical intervention. Plaintiff underwent a reconstruction of his right anterior cruciate ligament on 8 October 1999. On 20 October 1999 Dr. Carlson ordered additional physical therapy.
11. Plaintiff recovered well from his ACL reconstructive surgery, and on 22 November 1999 he was permitted to return to sedentary work. On 10 January 2000 Dr. Carlson indicated that as far as work was concerned, plaintiff was capable of driving but should not lift greater than twenty pounds. In February 2000, after returning to work as a truck driver, plaintiff experienced some difficulties stemming from the climbing in and out of the truck and from the long periods of time driving. Dr. Carlson cautioned plaintiff against these activities and indicated that it might have been too early for plaintiff to have returned to work in that capacity.
12. Plaintiff continued to have very good results from the surgery, and on 13 March 2000 Dr. Carlson released plaintiff to return to work without restrictions or limitations. In August 2000 Dr. Carlson found plaintiff to be at maximum medical improvement, and he assigned a ten percent rating to plaintiff's right leg.
13. After his injury, plaintiff did not return to work for defendant. Plaintiff was unable to work in any capacity as a result of the injuries sustained by him in the accident that occurred on 28 May 1999 from that date through 22 November 1999, when he was cleared for light duty work. There is no evidence to show that defendant had suitable light-duty work available to plaintiff on 22 November 1999. Plaintiff had fully recovered from his injuries such that he could return to full-duty, unrestricted work as of 13 March 2000.
14. Following plaintiff's injury, Robert Mace paid plaintiff $250.00 per week for approximately one month in July 1999, or a total payment of approximately $1,000. Plaintiff attempted to return to work as a truck driver in February 2000, but this attempt was unsuccessful. In July or August 2000 plaintiff began a job driving farm tractors and cutting hay.
15. The greater weight of the evidence is that plaintiff's attempts to work post-injury were not suitable. Before 13 March 2000, plaintiff was totally incapacitated from work and was not able to perform suitable employment in a competitive work environment. Defendant is, therefore, not entitled to an offset for the nominal wages, if any, which plaintiff earned while attempting to work as a truck driver and as a musician.
16. Robert Mace paid for some of plaintiff's medical treatment. The rest was covered, apparently, by Medicaid, or is unpaid. The record includes $57,656.31 in medical bills for reasonable and necessary medical expenses incurred by plaintiff for treatment by or at the direction of Cumberland County EMS ($311.00), Carolina Regional Radiology ($299.00), Fayetteville Associates in Laboratory Medicine ($75.50), Fayetteville Ambulatory Service ($3,112.00), Cumberland Anesthesia Associates ($2,030.00), Cape Fear Valley Medical Center ($39,625.62), Cape Fear Orthopaedic Clinic ($11,832.00), and Prescriptions ($371.19).
17. As a result of his injury by accident on 28 May 1999, plaintiff suffered permanent scarring on his left hand and on his right elbow.
18. Defendant owns and operates a concrete company which at all relevant times employed three or more employees in North Carolina and was subject to and bound by the workers' compensation act. Defendant did not have insurance for the date of injury.
19. The Full Commission finds that defendant was unreasonable in taking the appeal to the Full Commission and continuing to refuse to provide benefits to plaintiff in accordance with the Act and the Opinion and Order of the deputy commissioner.
 ***********
The foregoing stipulations and findings of fact result in the following additional
 CONCLUSIONS OF LAW
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the Industrial Commission has jurisdiction over this matter. G.S. § 97-2.
2. On 28 May 1999, an employment relationship existed between plaintiff and defendant. Defendant was not insured for workers' compensation purposes on the date of the injury giving rise to this claim.
3. Based upon his hourly rate of pay and the fact that he usually worked about 45 hours per week, plaintiff's average weekly wage on 28 May 1999 was $450.00. This yields a compensation rate of $300.00. G.S. § 97-2(5).
4. Plaintiff sustained compensable injuries by accident arising out of and in the course and scope of his employment with defendant on 28 May 1999. G.S. § 97-2(6).
5. As a result of his compensable injury by accident on 28 May 1999, plaintiff was temporarily totally disabled from 28 May 1999 through 13 March 2000, a period of 41-3/7 weeks. G.S. § 97-29.
6. Plaintiff's release to full-duty, unrestricted work on 13 March 2000 established that plaintiff no longer remained totally disabled within the meaning of the Workers' Compensation Act. G.S. § 97-2(9).
7. Plaintiff is entitled to receive twenty weeks of permanent partial disability benefits to compensate him for the ten percent rating to his right leg. G.S. § 97-31(15).
8. Plaintiff is entitled to receive compensation for the serious bodily disfigurement to his left hand and right elbow, as there is no other compensation payable under the Act as a result of this scarring. Plaintiff is entitled to receive $500.00 for the serious bodily disfigurement (scarring) to his left hand, and $1000.00 for the serious bodily disfigurement (scarring) to his right elbow. G.S. § 97-31(22).
9. Defendant is entitled to a credit for the out-of-pocket amounts paid to plaintiff for the one month following plaintiff's injury by accident for a total credit of $1,000.00 against the sums owed in response to the foregoing paragraphs. G.S. § 97-42.
10. Plaintiff is entitled to all medical compensation that was or is reasonably necessary to effect a cure, give relief, or lessen the period of his disability, including but not limited to the sums stated in Finding of Fact No. 16. G.S. §§ 97-2(19), 97-25. Future medical care is subject to the limitations of G.S. § 97-25.1.
11. Plaintiff is entitled to an award of attorney's fees in the amount of $300.00 as part of the costs of this appeal. G.S. §§ 97-88, 97-88.1
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff total disability benefits at the rate of $300.00 per week from 28 May 1999 through 13 March 2000 for a total of $12,428.57. Defendant is entitled to a credit toward this sum in the amount of $1,000.00 for benefits previously advanced to plaintiff, thereby leaving the sum of $11,428.57 which remains unpaid. This compensation ($11,428.57) has accrued and should be paid in a lump sum, subject to the attorney fee approved below.
2. Defendant shall also pay plaintiff twenty weeks of permanent partial disability benefits at the weekly rate of $300.00 to compensate him for the ten percent rating to his right leg for a total of $6,000.00. This compensation has accrued and should be paid in a lump sum, subject to the attorney fee approved below.
3. Defendant shall also pay plaintiff a total of $1500.00 for the serious bodily disfigurement suffered by plaintiff in the course of his compensable injury by accident. This compensation has accrued and should be paid in a lump sum, subject to the attorney fee approved below.
4. Defendant shall provide for all related medical treatment that is or was reasonably necessary to effect a cure, give relief, or lessen the period of plaintiff's disability, including but not limited to the $57,656.31 in medical expenses found in Finding of Fact No. 16.
5. Daniel T. Perry, III, attorney at law, shall be entitled to receive twenty-five percent (25%) of the sums awarded to plaintiff in paragraphs 1, 2, and 3, above, for his reasonable services in representing plaintiff in the appeal of this action to the Full Commission and for the anticipated efforts that will be necessary to collect the sums awarded plaintiff.
6. Defendant shall bear the costs of this proceeding, including an additional attorney fee to be paid to plaintiff's counsel in the amount of $300.00.
7. Based on the foregoing, defendant shall pay: (1) plaintiff the sum certain of $18,928.57 (subject to 25% attorney's fees); (2) Daniel T. Perry, III, attorney for plaintiff the additional sum of $300.00; and (3) all reasonable and necessary medical benefits, both past and future, if necessary, which includes the $57,656.31 of medical expenses approved herein.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ BUCK E. LATTIMORE CHAIRMAN
 S/_____________ THOMAS J. BOLCH COMMISSIONER